# UNITED STATES DISTRICT COURT
for the
District of Connecticut

FILED
2017 SEP 19 P 3:42
US DISTRICT COURT
BRIDGEPORT CT

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No.
INSTALLATION AND MONITORING OF A TRACKING )
DEVICE IN OR ON A GREY 2006 HONDA ACCORD )   3:17 MJ 1504 (WIG)
VIN# 1HGCM66826A002953 )
BEARING CONNECTICUT REGISTRATION 561ZOL )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the _____ District of ___Connecticut___ *(identify the person or describe property to be searched and give its location)*: INSTALLATION AND MONITORING OF A TRACKING DEVICE IN OR ON A GREY 2006 HONDA ACCORD, VIN# 1HGCM66826A002953, BEARING CONNECTICUT REGISTRATION 561ZOL

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*: See Attachment A.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of _____ U.S.C. § __see below__, and the application is based on these facts: Violations: 21 U.S.C §§ 841(a)(1), 846 and 18 U.S.C. § 1956.
See Affidavit of Special Agent Luke G. Yacovou

☑ Continued on the attached sheet.

☑ Delayed notice of  30  days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Luke G. Yacovou, Special Agent, USSS
*Printed name and title*

Sworn to before me and signed in my presence.

s/William I. Garfinkel

Date:  02/06/2012
*Judge's signature*

City and state: Bridgeport, Connecticut         William I. Garfinkel-United States Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED
2017 SEP 19 P 3:42
US DISTRICT COURT
BRIDGEPORT CT

| | |
|---|---|
| IN THE MATTER OF THE APPLICATIONS OF THE UNITED STATES OF AMERICA FOR A WARRANT AUTHORIZING THE INSTALLATION AND MONITORING OF A TRACKING DEVICE IN OR ON: 1) A GREY 2006 BMW 530XI, VIN# WBANF73596CG68794, BEARING CONNECTICUT REGISTRATION 574XOP; 2) A BLACK 2007 FORD F150, VIN# 1FTRW14557FA18180, BEARING CONNECTICUT REGISTRATION 1982CM; and, 3) A GREY 2006 HONDA ACCORD, VIN# 1HGCM66826A002953, BEARING CONNECTICUT REGISTRATION 561ZOL | **UNDER SEAL**<br><br>AFFIDAVIT FOR TRACKING DEVICE<br><br>(Fed. R. Crim. P. 41; 18 U.S.C. § 3117)<br><br>3:17 mj 1503 (WIG)<br>3:17 mj 1504 (WIG) ←<br>3:17 mj 1505 (WIG) |

STATE OF CONNECTICUT       )
COUNTY OF FAIRFIELD        )        ss: City of Bridgeport

Luke G. Yacovou, being duly sworn, deposes and states:

1.      I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), in that I am a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I am a Special Agent with the United States Secret Service ("USSS") and have been so employed since October 2006. Prior to joining the USSS, I served as a police officer with the New London, Connecticut Police Department from 2003 until 2006 and as a law enforcement ranger with the National Park Service from 2001 until 2003. Over the past ten years in law enforcement, I have been involved in investigations involving environmental crimes, violent crimes, property crimes, narcotics investigations, threats against the President of the United States, fraud against the government, financial crimes, and investigations involving the illegal distribution of counterfeit currency, narcotics, firearms, and other contraband. I have participated in investigations of individuals suspected of distributing narcotics, and coordinated controlled purchases of narcotics utilizing confidential sources and cooperating witnesses. I have written, obtained, and coordinated the execution

1



of search and arrest warrants pertaining to individuals involved in the distribution of narcotics, conducted electronic as well as physical surveillance of individuals involved in the illegal distribution of narcotics, analyzed records documenting the purchase and sale of narcotics, provided testimony both in grand jury proceedings and state court proceedings, and spoken with informants and subjects, as well as other local, state, and federal law enforcement officers, regarding the manner in which narcotics distributers obtain, finance, store, manufacture, transport, and distribute their narcotics.

2. As part of my duties, I am currently the co-case agent in an investigation into the narcotics trafficking activities, laundering of narcotics trafficking proceeds, and related criminal violations, initiated in 2011 by Homeland Security Investigations (HSI), the United States Secret Service, and the New London Police Department, of a large group of individuals operating in and around New London, Connecticut. The investigation has revealed that these individuals are actively procuring cocaine through sources in Puerto Rico, and bringing the cocaine to the New London area for re-distribution throughout the State of Connecticut. The facts and circumstances of the investigation, as set forth hereinafter, describe the existence of an organized narcotics distribution network, based largely in New London, actively smuggling cocaine directly into the city in a variety of ways. Thus far, the investigation has showed this network uses the United States Postal Service to bring drugs from Puerto Rico into Connecticut.

3. According to a known and reliable confidential source ("Source One,") Pedro Rivera, also known as "Cheito," directs the wholesale procurement and distribution of kilogram quantities of cocaine. Rivera obtains the cocaine from sources in Puerto Rico and supplies it to others throughout Connecticut. Rivera is believed to have significant, high-level contacts in Morovis, Puerto Rico, from whom he obtains his narcotics. Rivera ships the cocaine through a variety of methods, including commercial airline flights and through the United States Postal Service. According to this same source, LUIS ZAYAS, also known as "Guichan," is a trusted associate of Rivera's, who assists Rivera in the distribution of cocaine, and is a high ranking member of the organization.

4. To date, numerous investigative tools, including Title III authorized interception of wire and electronic communications, have been used in order to identify members of the organization, sources of supply, customers, assets, and the manner and means used by the members of the organization to distribute narcotics and to launder money. To date, the wiretap investigation has not resulted in the interception of phones used by Rivera or ZAYAS. Physical surveillance of Rivera, ZAYAS and other high ranking members of the organization has proved difficult, as they frequently employ counter surveillance measures to avoid detection by law enforcement.

5. I make this affidavit in support of a warrant authorizing the installation and use of a GPS tracking device on (1) a grey 2006 BMW 530XI automobile, with corresponding VIN# WBANF73596CG68794, which currently bears Connecticut registration 574XOP, registered to Gregorio Zayas-Arroyo, date of birth July 6, 1981, of 12 Hamast Avenue, Waterford, Connecticut (the "**Subject Vehicle 1**"); (2) a black 2007 Ford F150 pick-up, with corresponding VIN# 1FTRW14557FA18180, which currently bears Connecticut registration 1982CM, registered to Eduardo Vazquez, date of birth October 2, 1977, of 8 Mount Laurel Road, Norwich, Connecticut ("**Subject Vehicle 2**"); and, (3) a grey 2006 Honda Accord automobile, with corresponding VIN# 1HGCM66826A002953, which currently bears Connecticut registration 561ZOL, registered to Luis A. Zayas, date of birth September 18, 1977, of 12 Hamast Avenue, Waterford, Connecticut ("**Subject Vehicle 3**").

6. Your affiant further states that there is probable cause to believe, and I do believe, that the installation of a tracking devices in or on **Subject Vehicle 1, 2, and 3**, and use of the tracking device, will lead to evidence, fruits, and instrumentalities of violations of 21 U.S.C. §§ 841(a)(1) and 846 (conspiracy to possess with intent to distribute narcotics), and 18 U.S.C. § 1956 (money laundering), as well as, to the identification of individuals who are engaged in the commission of the target offense and related crimes.

7. Based upon information known to me as a result of my participation in this investigation, as well as information, which I have determined to be accurate and reliable, provided to me by other law

enforcement officers, I am familiar with the information discussed herein. Where the contents of documents, or communications with others, are reported herein, they are set forth in substance and part, unless otherwise indicated.

8. This affidavit does not set forth all information known to me concerning the referenced investigation. Rather, this affidavit sets forth sufficient facts to establish that probable cause exists to support the issuance of warrants authorizing the installation and use of a GPS tracking devices on the subject vehicles.

*The Use of the Subject Vehicles*

9. LUIS ZAYAS, was born on September 18, 1977, and he currently resides at 12 Hamast Avenue, Waterford, Connecticut. ZAYAS uses telephone number (860) 514-0243. ZAYAS has no prior criminal convictions. ZAYAS is believed to be Rivera's close associate and assists Rivera in distributing cocaine. As discussed in detail below, in April of 2012, the United States Postal Service intercepted an Express Mail package that was addressed to ZAYAS. The package was sent from Puerto Rico to an address in Mystic, Connecticut. Inside the package, law enforcement agents found coffee cans that contained approximately 250 grams of suspected cocaine hidden in the cans.

10. On April 19, 2012, a United States Postal Service (USPS) express mail package with a mailing label affixed to it bearing tracking # EG 951361100 US, addressed to "Luis Zayas, 40 Whitehall Ave., Mystic, CT 06355," with a return address of "Carmen Zayas, Calle Serfin Dias #46 Barahona Morois [Morovis] P.R. 00685" was examined by USPS agents working with the San Juan Prohibited Mail Team in San Juan, Puerto Rico. The package was a rectangular shaped and weighed approximately 4 pounds and 4 ounces.

11. On April 24, 2012, San Juan USPS agents placed the subject package in a lineup for exterior examination by a narcotics detection canine who alerted to the presence of narcotics in the subject package. Agents subsequently obtained a search warrant for the package and found various food items inside the package including two bags of "Café Rico" coffee. Inside each coffee bag, agents found

4

bundles hidden in the coffee. Each bundle consisted of carbon paper and clear tape, and inside each bundle was a white powdery substance that tested positive for cocaine. The combined weight of the cocaine bundles was approximately 275 grams.

12. I know, based upon my participation in this investigation, and reliable information provided by Source One, that one of Pedro Rivera's methods for obtaining cocaine is to mail the cocaine directly from Puerto Rico to various addresses in Connecticut. I believe that the cocaine found inside the subject package belonged to Rivera's organization, and that the seizure confirms that Rivera's organization is bringing cocaine in to Connecticut through the use of the mail. The subject package was addressed to Luis ZAYAS, who is one of Rivera's close associates, and who assists RIVERA in the packaging and distribution of cocaine.

13. Among other things, the investigation indicates that ZAYAS, his associates, and other subjects of this investigation, use passenger motor vehicles to facilitate the distribution of narcotics and proceeds of narcotics sales with each other, and others known and unknown.

### Subject Vehicle 1

14. On September 26, 2012, officers assigned to this investigation observed **Subject Vehicle 1** parked at 202 Coleman Street, New London, Connecticut. Officers observed Maritza Reymundi, a known narcotics distributor operating in New London, approached the driver's side window and lean in to **Subject Vehicle 1**. Based upon my training and experience, and my participation in this investigation, I know that drug traffickers often engage in narcotics-related transactions by making contact and meeting with customers, suppliers or other associates in their vehicles.

15. Continuing on November 2, 2012, at approximately 1715 hours, Officers observed **Subject Vehicle 1**, via covert camera, parked in front of 32/34 West Pleasant Street with the hazard lights flashing. Officers observed ZAYAS walk from the area of 32/34 West Pleasant Street to **Subject Vehicle 1** and get in the driver's seat. At approximately 1721 hours, ZAYAS travelled to 2 Kennedy Drive,

Norwich, Connecticut. Norwich Police advised the occupants of 2 Kennedy Drive were recently involved in a home invasion at that address related to narcotics distribution.

16. On January 22, 2013, surveillance units observed Alex Perdomo, a known associate of Pedro Rivera, operating **Subject Vehicle 1**. Surveillance units observed Perdomo park **Subject Vehicle 1** at a convenience store at 290 Broad Street, New London, Connecticut. Perdomo met Pedro Rivera in the convenience store parking lot and leaned into a Jeep Wrangler owned by Rivera. Perdomo and Rivera talked for approximately five minutes. Perdomo then traveled in **Subject Vehicle 1** to a CVS Pharmacy and Stop and Shop grocery store before traveling to 32-34 West Pleasant Street, New London, Connecticut, a location known to be used by ZAYAS and other members and associates of the organization in furtherance of their narcotics distribution activities.

Subject Vehicle 2

17. On September 21, 2012, at approximately 1934 hours, officers assigned to this investigation observed ZAYAS, operating **Subject Vehicle 2**, arrive at "Hair Just For You," a barbershop located at 426 Williams Street in New London. Information provided by reliable sources of information, as well as, information provided by the New London Police Department Vice and Intelligence Unit reveals that employees of the barber shop were involved in the smuggling of narcotics from the Dominican Republic to New York and New London. **Subject Vehicle 2** parked in the rear parking area of the barber shop. The business was closed at the time; however, lights were still on inside the business.

18. On October 18, 2012, at approximately 1730 hours, officers assigned to this investigation observed Juan G. Cheverez, a known narcotics distributor and source of supply of cocaine in New London, ZAYAS, and several other individuals outside 32-34 West Pleasant Street in New London. This location was previously identified in this investigation as a location utilized by Cheverez and others to facilitate the distribution of cocaine. Surveillance officers observed **Subject Vehicle 2**, believed to be operated by ZAYAS, and a Coca-Cola vehicle exit West Pleasant Street.

6



Approximately fifteen minutes later, officers located **Subject Vehicle 2** parked at Rivera's residence at 600 Meridian Street, Groton, Connecticut. At approximately 1640 hours, officers observed ZAYAS exit Rivera's residence and enter the operator's seat of **Subject Vehicle 2**. ZAYAS departed the area shortly thereafter.

Approximately ten minutes later, officers located ZAYAS and **Subject Vehicle 2** at the Rotten Apple Bar, 942 Route 12 in Groton. Additional surveillance units responded to the Rotten Apple Bar and established surveillance positions. At approximately 2100 hours, a dark colored Toyota Camry, bearing Connecticut plate 957ZNO, and registered to, and operated by Juan Hernandez (another known drug distributor) arrived at the Rotten Apple. Hernandez entered the Rotten Apple. At approximately 2120 hours, ZAYAS, Eduardo Vasquez, and Hernandez exited the bar. ZAYAS and Vasquez entered **Subject Vehicle 2**. Hernandez entered the Toyota Camry and both vehicles departed. Hernandez then followed ZAYAS and Vasquez to the Gold Club, 403 Route 12, in Groton. Surveillance officers followed ZAYAS, Hernandez, and Vasquez into the Gold Club. ZAYAS, Hernandez, and Vasquez sat together inside the Gold Club and interacted with several employees. Groton Police department personnel advised that the Gold Club is a business known for narcotics distribution.

19.     On November 12, 2012, at approximately 1334 hours, officers observed ZAYAS and Cheverez meeting at 12 Hamast Avenue in Waterford, Connecticut. Shortly after, both of them departed the area in **Subject Vehicle 2**. The surveillance team followed Cheverez and ZAYAS to New England Cycle Works located at 661 Gold Star Highway in Groton. The two individuals then proceeded to the Wal-Mart store in Groton, then to Best Way Gas Station and then back to 12 Hamast Avenue in Waterford. The surveillance was then discontinued.

20.     On January 30, 2013, information was received the that Cheverez had instructed one of his narcotics customers to meet him at his garage at 22 Ashcraft Road in New London, to pick up narcotics. Surveillance units observed Eduardo Vasquez and Juan Cheverez drive away from 22 Ashcraft Road in **Subject Vehicle 2** following the transaction.

7



Subject Vehicle 3

21.     On November 30, 2012, at approximately 1230 hours, officers observed ZAYAS, operating **Subject Vehicle 3** in the area of the Crystal Mall, 850 Hartford Turnpike, Waterford, Connecticut. ZAYAS was the only person in the vehicle. Officers followed ZAYAS from Waterford to Hartford, Connecticut. At approximately 1310 hours, ZAYAS arrived in the area of 269 Franklin Avenue and parked. At approximately 1430 hours, officers observed ZAYAS exit the driveway of La Fonda Bar and Restaurant located at 269 Franklin Street in Hartford. Officers then followed ZAYAS from 269 Franklin Avenue to Route I-91S. ZAYAS drove in a circular pattern while in Hartford, which based on my training and experience, indicated ZAYAS employed counter-surveillance techniques to identify surveillance team members. Surveillance was then lost in the area of I-91 because ZAYAS was travelling at high rates of speed.

22.     On January 18, 2013, surveillance units observed ZAYAS operating **Subject Vehicle 3**. Surveillance units observed **Subject Vehicle 3** travel to 32-34 West Pleasant Street in New London, and meet with Juan Cheverez and others known to be involved in narcotics distribution. **Subject Vehicle 3** then travelled to the PR Speed Shop, an auto repair garage located at 10 Westwood Avenue in New London. The owner of PR Speed Shop, Frankie Rivera, was previously observed purchasing narcotics from Juan Cheverez.

23.     On January 22, 2013, surveillance units observed **Subject Vehicle 3** parked at 12 Hamast Avenue, Waterford, Connecticut. **Subject Vehicle 3** was parked next to Pedro Rivera's Jeep Wrangler, bearing Connecticut registration plate 511ZNN. During the course of the investigation, surveillance units have observed multiple vehicles used by targets of the investigation, believed to be involved in narcotics distribution, parked at 12 Hamast Avenue on multiple occasions.

24.     In order to track the movement of the **Subject Vehicles 1, 2, and 3,** effectively, and to decrease the chance of detection, I seek authorization to place a tracking device in or on the subject vehicles while they are in the District of Connecticut. It is believed that the information to be obtained



from the tracking device will facilitate physical surveillance and will constitute or lead to evidence of the target offenses. It will, for example, assist agents in determining the identities of ZAYAS' associates and the locations where ZAYAS and his associates meet.

25. Because ZAYAS may park **Subject Vehicle 1, 2, and 3** in a driveway or on other private property, it may be necessary to enter onto private property in order to effect the installation, repair, replacement, and removal of the tracking device. To ensure the safety of the executing officers and to avoid premature disclosure of the investigation, it is requested that the court authorize installation and removal of the tracking device during both daytime and nighttime hours. Given the evidence that ZAYAS is part of a large-scale drug trafficking organization, investigators will seek times and places to effect the installation, repair, replacement and removal of the tracking device that will best ensure the safety of investigators and best ensure the integrity and secrecy of this investigation.

26. In the event that the Court grants this application, there will be periodic monitoring of the tracking device during both daytime and nighttime hours for a period of 45 days following installation of the device. The tracking device may produce signals from inside private garages or other such locations not open to the public or visual surveillance.

27. It is requested that the warrant and accompanying affidavit and application in support thereof, as they reveal an ongoing investigation, be sealed until further order of the Court in order to avoid premature disclosure of the investigation and better ensure the safety of agents and others.

28. In accordance with 18 U.S.C. 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), I request that the warrant delay notification of the execution of the warrant for a period not to exceed 30 days after the end of the authorized period of tracking (including any extensions thereof) because there is reasonable cause to believe that providing immediate notification would seriously jeopardize the investigation.

WHEREFORE, your affiant respectively requests that the Court issue a warrant authorizing members of the U.S. Secret Service or their authorized representatives, including but not limited to other

9



law enforcement agents and technicians assisting in the above-described investigation, to install a tracking device in or on **Subject Vehicle 1, 2, and 3** within the District of Connecticut, regardless of whether **Subject Vehicle 1, 2, and 3** is located on public or private property, within 10 calendar days of the issuance of the requested warrant; to remove said tracking device from the subject vehicle after the use of the tracking device has ended; to surreptitiously enter the subject vehicle and/or move the subject vehicle to effect the installation, repair, replacement, and removal of the tracking device; and to monitor the tracking device, for a period of 45 days following the issuance of the warrant, including when the tracking device is inside private garages and other locations not open to the public or visual surveillance, both within and outside the District of Connecticut.

_____
Luke G. Yacovou, Special Agent
United States Secret Service

Sworn to before me this 6th day of February, 2013.

_s/William I. Garfinkel_
THE HONORABLE WILLIAM I. GARFINKEL
UNITED STATES MAGISTRATE JUDGE